WILLIAM A. NOEL et al., Plaintiff in Error, v. ISAAC WHEATLY, Defendant in Error.

WARRANTY OF TITLE OF SLAVE: DAMAGES FOR BREACH OF.—The amount of damages which the purchaser of a slave is entitled to recover from his vendor for breach of a warranty of title, in the absence of all fraud in the sale, is the purchase-money and interest, and his expenses incurred in defending the title; he cannot recover for the loss of a good bargain.

IN error from the Circuit Court of Tallahatchie county. Hon. William L. Harris, judge.

Isaac Wheatly sued the plaintiff in error in the Circuit Court of Tallahatchie county, for damages sustained by him, by reason of a breach of warranty of title of a slave sold by plaintiff in error, to him.    There was also one count upon a fraudulent warranty.    The defendants below pleaded the general issue.    Verdict and judgment against the defendants, for $1073.52, and motion for a new trial, which was overruled.    There was a bill of exceptions taken to the overruling of the motion, which embodies the evidence in the trial and the instructions given and refused by the court.    One of the grounds assigned for a new trial in the motion was, that the court erred in giving instructions for plaintiff, and refusing instructions asked for by defendant.

It appears from the evidence, that on the 21st day of May, 1852, Noel sold to Wheatly a negro boy, for the sum of five hundred dollars, the title to which he warranted, by bill of sale executed by him on that day, and also by one H. D. Bridges, as his surety.    Soon afterwards Noel sold the boy to one Stephens, for $1000, and Stephens sold to one Pate.    Both of these sales were made with warranty of title.

On the 10th of September, 1852, Henry Allen, jr., instituted an action of replevin in the Circuit Court of Tallahatchie county, against said Pate, for the recovery of the boy; and upon the trial verdict and judgment was rendered for him, on the 7th of March, 1854.    Noel had notice of this suit, and the record thereof was introduced as evidence on behalf of plaintiff, in the Circuit Court.

Porter, a witness for plaintiff, testified that he knew the boy sold by Noel to Wheatly; that he was worth on the 7th of March, 1854, one thousand, or eleven hundred dollars; to which evidence defendant excepted, because the criterion for damages was not the value of the negro at the time of the breach of warranty, but the price paid for him.    Witness, on cross-examination, stated that the negro boy would be worth less, if of bad character and a runaway.

Plaintiff also proved that Stephens, his vendor, had sold to Pate for one thousand dollars, with warranty of title, and that since the recovery of the boy by Allen, in the replevin suit, he had paid $1000 to Pate, on account of his warranty.

Defendants introduced proof, showing that the boy was a runaway, and was only worth some $600. He also proved that Mrs. Bohannon—now Mrs. Noel, and wife of defendant, Noel—brought the boy to this state for the purpose of selling him.

The following instructions were asked by plaintiff and given by the court:—

1. If the jury believe, from the evidence, that Noel knew he had no title, and he really had none, and sold the negro to plaintiff, warranting the title, when he knew he had none, and plaintiff confided in and relied upon said warranty, and acted on the same, believing it to be true, and sold the negro with warranty, and was compelled to pay out one thousand dollars, in consequence of the false warranty of defendant Noel, then plaintiff is to recover the amount he was so compelled to pay out, and interest from the time of payment.

2. If the jury believe, from the evidence, that the defendant, Noel, made a false warranty of title to said negro, in the sale of him to plaintiff, and practised a deceit or fraud upon plaintiff in said sale and warranty, and the plaintiff bought and sold said negro, believing said warranty to be true, and relying upon the truthfulness of the same, and was injured and damaged thereby, he is entitled to recover the amount of such damage; and this is true, whether the defendant intended to practise a deceit or not.

3. The record and judgment in the replevin suit between Allen and Pate, if fair, and properly made upon notice to defendant, is sufficient evidence of Allen's title to said slave therein mentioned, until the contrary appears.

4. A sale by the husband, of his wife's property in this state, conveys no title to the purchaser, unless the wife join in the sale, as the statute directs.

The defendant asked the following instructions:—

1. That it is incumbent on Wheatly to prove that Noel had no title to the negro sold him by Noel, and that he had suffered damage in consequence of such want of title.

2. That the record introduced by plaintiff is the record of an action of replevin, and that the action of replevin is a possessory action, and by it the right of possession is determined.

3. If the jury believe, from the evidence, that the negro belonged to Mrs. Noel, and was sold by Noel, yet the plaintiff is entitled to recover nothing on this account, unless it appear that Mrs. Noel has set up claim to the negro, and the plaintiff has suffered damages on account of Mrs. Noel having set up title.

4. If the jury believe that Noel had no title, and that the title was in Allen, it is for them to consider all the testimony, and give it such weight as they think proper, and determine what was the value of the boy at the time he was recovered by Allen.

5. The suit of replevin is a possessory action, and does not necessarily determine the question of title. .

The first, third, and fourth instructions were given, and the second and fifth refused, and the following given instead thereof:

"But the judgment in replevin is *primâ facie* evidence that the defendant in this action had no title, if he had notice of its pendency, unless he shows that his title was not in controversy."

Defendant excepted to the giving of the instructions asked for by plaintiff.

*D. Shelton,* for plaintiff in error.

The warranty sued on is of title, not of possession. The action in *Allen* v. *Pate,* was *replevin.* The cause of action alleged is, "that Allen, at the time that suit was brought, was entitled to the immediate possession of the slave, and that Pate wrongfully withheld him: the judgment of the court was for recovery of the possession, with one cent damages for detention. Now, upon the face of the pleadings, the only question was that of Allen's right to immediate possession. Did that necessarily involve a question of title between Allen and Pate? Certainly it did not. Pate may have held the title, and yet Allen have been entitled to the immediate possession; for it does not always follow, that because one owns a slave, therefore he has the right either to resume or retain possession of him. It is often otherwise in cases of hiring, pledge, mortgage, executory contracts of sale, possession forcibly taken, or wrongfully detained, &c., &c. This results from the nature of an action of replevin, which only involves the plaintiff's right to *immediate possession,* and *the wrongful taking or detention by the de-*

*fendant,* and does not involve a question of paramount title as between the parties litigant. 12 S. & M. 229; 7 Johns. R. 143; 1 Sch. & Lef. 324; 2 Ib. 222, 223; 7 Com. Dig. 265, 266; Brown, Action at Law, 446; and if these exist, the action can be maintained, no matter who holds the legal title. If they do not both exist, the action cannot be maintained, although the plaintiff has the legal title. See 1 Sch. & Lef. 324; 2 Ib. 222, 223; 2 Selw. N. P. Replevin, and n. a.

Upon the foregoing principle, the plaintiff, before he had proved a breach of Noel's warranty, was under the necessity of proving that the plaintiff's right of possession involved in the case of Allen against Pate, existed against Wheatly before his sale to Pate; that Noel, while he owned the slave, had been guilty of the wrongful taking or the wrongful detention which was involved in that suit.

Our statute, so far from changing the foregoing principles of law, confirms them by its language; "Whenever any goods or chattels *are wrongfully taken or detained,*" "replevin may be maintained by any person *having the right to immediate possession,*" H. & H. 817: thus making both the right to immediate possession and the wrongful taking or detention the gist of the action, and requiring both before the action will lie.

It is a mistake to suppose that replevin is an action to try title to personal property. Trover and detinue are the actions to try title: replevin only tries the right to possession, against a *wrongful* taker or detainer. Nay, it is true that after recovery in replevin, the defendant in that action might turn right round and sue the plaintiff in it, by trover or detinue, and upon his *title* recover the goods back. 1 Sch. & Lef. 324.

Replevin is to personal property what forcible entry or unlawful detainer is to realty—a mere possessory action, not an action to try title.

But it is said that Noel should have proved that his title was not involved in said law-suit,—not until at least a *primâ facie* case had been made against him. There was in this case no question about *primâ facie* evidence of the defeat of Noel's title. Noel had notice of the action in *Allen* v. *Pate,* and is therefore estopped

from denying whatever is proved by that record: if, therefore, it proved a failure of Noel's title at all, it proved it so as to bind Noel forever, and estop him from a pretence to the contrary. If its legal effect falls short of proving that failure of Noel's title, it was insufficient to sustain this action; and so the question must be determined upon the legal effect of the record in said case of *Allen* v. *Pate.* I have already shown that it did not prove the failure of Noel's title.

The court should not have given the fourth instruction asked by plaintiff. It was this: "A sale by the husband of his wife's separate property, conveys no title, unless the wife join in the sale." That is very good law in the abstract, but leading to wrong conclusions in the present case. It is true that there was evidence that the slave had belonged to Noel's wife before marriage, but it is not true that any person claiming under said wife had set up any claim whatever to the slave, either in the hands of Wheatly or his assignees. It is not true that there was any proof that Allen's claim was in any way derived from Noel's wife. Now Wheatly could not maintain this action upon alleged breach of warranty by showing even a paramount title in defendant's wife which had never been enforced, or in any way set up against the title conveyed by Noel, and yet the charge as given, evidently led the jury to believe that they could find a verdict against Noel, because his wife's title had not been formally conveyed.

The court should not have given the second instruction asked by plaintiff. It is predicated upon the hypothesis that fraud was alleged and proved against Noel, and in an action of trespass on the case for fraud and deceit, would have been relevant. But this was simply an action for breach of warranty,—strictly a matter of covenant. The declaration is not founded on deceit or false representation. If it had been on that ground, there was no proof of deceit or fraud—not a particle of it. The instruction, therefore, was wholly inapplicable to the action itself, and also irrelevant to any proof made in the cause. There was no question of fraud before the jury to be inquired of. See 4 Johns. R. 6, 23.

The court should not have given the first instruction. In an action for breach of warranty, the measure of damages is not what the property was worth at the time the vendee was dispossessed,

nor the amount he had to pay by reason of the failure of title, but it is the purchase-money and interest.   4 Johns. R. 1; 13 Ib. 50.

The court, in the first instruction, charged the jury directly the reverse of this.   If it had been an action on the case for fraud, and there had been any proof of fraud, the measure of damages would have been right, but there was neither in this case.

*Harrison* and *Matthews,* for defendant in error.

There are but two questions presented by the record, which are worthy of notice, and they arise under the counts in the complaint, as to the criterion of damages.

Are the purchase-money and interest, or the real value of the slave, the criterion of damages?   We maintain the latter, and cite the following authorities: 6 How. Miss. R. 349; Sedg. on Dam. 296, 297, 298, 299; 10 Ala. R. 255, 933; 11 Ib. 732; 16 Ib. 806; 8 Port. R. 428.

There is no difference in the rule, whether the false warranty relates to unsoundness, or to the title of personal property.   Sedg. on Dam. 299.   There is, as before stated, a conflict of testimony as to the value of the slave : the jury disposed of that, and the court will not disturb their verdict.

But this whole difficulty, or rather this question, is entirely obviated by a consideration of the question growing out of the last count.

Certainly, fraud, and damage in consequence of it, will give a right of action, and the only measure of damages, or the least, is, the actual injury done.   This is stating the law really with more rigor against the defendant in error than the books warrant.   But the proof of the fraud and its consequence, the payment and loss of the thousand dollars, is full and convincing.   This the jury believed from the testimony, and to this point Wheatly's instructions from the court were directed.

Noel had notice of the suit, by which Wheatly's sub-vendee was deprived of the slave, and is bound by it.   See 4 Ala. 707, and authorities there cited; also 1 Johns. R. 517; 7 B. Monroe, R. 133; Sedg. on Dam. 296, 297.

As to the charge in regard to the action of replevin—we submit

that while it is a possessory action, it also involves the title, and the instruction, as given with the qualification, is correct.

*W. Brooke*, for defendant in error.

The question in this case, is as to the measure of damages in an action for breach of warranty of a slave. We contend, that it is the value of the slave, at the time of recovery by title paramount, and not the price paid. The authorities on this point are somewhat conflicting. They have mostly been collated by Mr. Sedgwick, in his work on the Measure of Damages, and the result is thus stated by him: "The principle that it is the value, and not the price, which governs the compensation, has been recognized by the courts of this country;" p. 293, and cases cited. 2 Hill. 228; 4 Ib. 625. In *Shannon* v. *Comstock*, 21 Wend., it is stated in general terms, that as a general rule, in regard to actions for non-performance of contracts, (other than conveyances of lands,) the party ready to perform, may recover damages to the extent of his injury, and that the price agreed to be paid on actual performance, is not the measure of damages. See also 2 Kent, Com. 480, in notes; *Borrikin* v. *Evans*, 3 Rawle, 23; 1 Hill, 234. At best, the price given can only be regarded as *primâ facie* evidence of value, which may be rebutted. Sedgwick, 290. In the case at bar, the negro was sold by Wheatly, and a recovery had of his vendee by the true owner. Wheatly sold for $1000, which he was compelled to refund. In cases of this sort, the rule is more explicit. "The rights of the parties in a case of warranty are not, however, always presented in the simple form that we have just been considering. The vendee in some instances confiding in the warranty, is subjected to indirect or consequential loss. *It seems when the chattel has been sold a second* time by the vendee, relying on the original warranty, and he is prosecuted by the second vendee, and recovery had, the first vendor, if duly notified of the claim, and it is not unnecessarily resisted, is liable for the whole amount of the damages and costs recovered against the first vendee, by the second vendee, as well as his costs of defence." Sedgwick on Measure of Damages, 296.

Noel had full notice of the suit against the vendee of Wheatly,

as is shown by his letter in the record. See also *Blasdale* v. *Babcock*, 1 J. R. 517.

The court was right in instructing the jury that, though the action of replevin is a possessory action, it might be considered as involving the title to the slave, unless the contrary was shown. The right of possession results *primâ facie* from right of title.

But be the merits of this case what they may, it is insisted that the court cannot take notice of the testimony and instructions, because they are not properly set out by bill of exceptions. They appear simply as statements by the clerk. The only bill of exceptions, as certified by the judge, is one to the action of the court, in overruling a motion for a new trial.

*F. M. Aldridge,* for plaintiff in error in reply.

The principal error relied upon by us in this cause, is the question presented by the instructions asked by the plaintiffs below. What is the measure of damages, in an action for a breach of warranty of *title* in personal property? The court below instructed, that the measure of damages was the loss of the vendee. We insist the true measure of damages is the purchase-money and interest.

The correct rule is to seek the intention of the parties, unless, as in some instances, public policy determines the force of the instrument. It could never be contemplated by a party warranting title, to indemnify for all profits that might be made by speculations. It can only mean, if my title is worthless, I will refund your money and interest.

The cases referred to by defendant in error, are not similar to this case. The case in 6 How. 349, is a mere expression of opinion by Justice Turner, without examination, as he says, and without argument, not necessary to the decision of the case then at bar. Other cases referred to, are cases of warranty of *quality* and not of *title,* or suits for breach of contract by the non-delivery of articles; these articles being increased in market value. They do not relate to the warranty of title. Sedgwick, in his reference to cases, and in his discussion of this subject, cites only cases of this character. The better opinion is intimated by Chancellor

Kent. Sedgwick on Damages, 295, library edition; 2 Kent, Com. 480, and notes, with reference to authorities there cited.

What distinction can be drawn between the measure of damages in an action for a breach of warranty of title of personal property and real estate? None whatever. For *the reason of rule* of the measure of damages in real estate, see *Staats* v. *Ten Eyck*, 3 Caines, 333; *Pitcher* v. *Livingston*, 4 Johns. 1; *Bennett* v. *Jenkins*, 13 Ib. 60; *Bender* v. *Fromberger*, 4 Dallas, 441; *Stout* v. *Jackson*, 2 Rand. 132; *Henning* v. *Withers*, 25 Car. 584; *Hanson* v. *Bechman*, 4 Dana, 253; and every reason here given applies with all its force to the case at bar; and it is insisted there can be no reason for a different rule in this case. The argument there is wrong, or it sustains this case. It is based upon policy, as being a *general rule* more consonant with justice. In real estate, in the early settlement of a country, it may sell for a pittance. Upon it a large and commercial city may spring up in a few years, so that the real estate sold for a few hundred dollars, may be worth millions. The same is true in the sale of negroes, by their natural increase. Even if reason should, in the case of perishable chattels, as in the cases cited by Sedgwick, when these consequences cannot flow from such decision, be good, it could not apply to personal estate in negroes, so different in many respects from other personal property. It is a property so different from other personal property, that some of the states have made them real estate. Mr. Sedgwick does not refer to a single case where title to this species of property was in question.

Again, there are many reasons which might be given, why there should be a difference in the measure of damages in breach of warranty of title, and a breach of warranty as to quality. The one more frequently happens from ignorance, and the other from deceit and cunning.

It may be urged, that this principle is not in this cause by the second count of the declaration or complaint, it being for fraudulent representation. There is not, however, one particle of proof showing that Noel did not act in good faith. Bridges says that the negro was the property of Mrs. Bohanan, now Mrs. Noel, wife of plaintiff in error; and that he ran away from her in Memphis,

about twelve years ago. No bad faith is shown on the part of Noel.

2. The second instruction asked by the defendant below, and refused by the court, is law, beyond all question. It is too clear to admit of argument. Hutch. Code, 817. The basis of the action is possession. It is a possessory action, not an action to try title, nor does the qualification given by the court remedy the error. The instruction given by the court without its being asked by the plaintiff or defendant, required the defendant to prove a negative, when it was incumbent on the plaintiff to make out his case—compelled the defendant to introduce proof, and that proof in explanation of a *record*, and that record introduced not by himself or counsel. The plaintiff must show every thing necessary to establish his case, and the defendant is certainly not required to explain by testimony, the latent ambiguities of the defendant's *record* evidence.

Fisher, J., delivered the opinion of the court.

The plaintiff below, brought a suit in the Circuit Court of Tallahatchie county, to recover damages resulting from the breach of a warranty as to the title of a slave, sold by the defendants to the plaintiff.

The sale was made in the spring of 1852. During the same year, Henry Allen, jr., brought an action of replevin in the Circuit Court of Tippah county, against the vendee of the purchaser to recover the slave, and succeeded in obtaining judgment at the March term, 1854, of said court. It appears that the defendants were notified of the pendency of this action, and an opportunity afforded them of defending the same if they so desired. The price paid by the plaintiff to the defendants for the slave, was $500, and he was sold by the plaintiff to Pate, from whom Allen recovered for $1000. It also appears, that the plaintiff having warranted the title, has reimbursed to Pate since the recovery by Allen of this latter sum.

The question under this state of the case, for consideration, is, whether the plaintiff is entitled to recover the damages resulting from a breach of his own warranty to Pate, or whether he shall be restricted to the sum which he paid to the defendants, with interest .

thereon; and such incidental damages as necessarily resulted from the breach of the warranty. The court below instructed the jury that the former was the rule by which they should be governed in this respect.

The counsel for the respective parties have bestowed much labor in collecting together the numerous authorities relating to this vexed question; and after a careful examination of the most of them, we are fully prepared to agree with Chancellor Kent, who, speaking upon this subject, says, that "they *are in perplexing contrariety.*" It is difficult in many of them even to arrive at the meaning of the court, or to deduce the rule upon which it acted. The rule, as once understood and acted upon, is certainly clear and free from both difficulty and conflict of opinion, and it is this: that in the absence of fraud, the plaintiff can only recover back his money with interest, and such damages as he necessarily sustained in protecting his title. This is certainly the rule of damage on the covenant of warranty in the sale of land, and no good reason is perceived why the rule should not be the same with respect to both kinds of property. The rule is one which is certain, easy of application, and must, in most cases, be just in its operation. All the authorities hold that mere speculative profits shall not be recovered by the vendee. If this be true, how is it possible to conceive a case in which he could recover more than he expended in the first instance, in making the purchase, and such other incidental expenses as were incurred in defending the title.

The warrantor undertakes, by his covenant, to insure the vendee, against the loss of the money invested in the purchase. To this extent he is clearly liable, but not for the loss of a good bargain, under which head, all beyond the price paid by the vendee must be considered. Sedgw. on Dam. 292, 293.

But it is said, that the plaintiff having sold the slave for $1000, and his vendee having recovered, or rather received this sum on account of the warranty existing in that transaction, he, the plaintiff, has, to this extent, sustained damages. If it be true that the party cannot be compensated merely for the loss of a good bargain, it is difficult to see upon what ground this position can be sustained. It must be borne in mind that the sum of $500, of

this $1000, was the profits which the plaintiff made by the sale. He cannot recover, according to the authority, merely for the profits which he has returned to the person to whom he sold the slave. Leaving out of view the question of speculation, the plaintiff is fully reimbursed, by receiving back the money which he paid to the defendants, with interest, and such damages as have already been enumerated.

Under the view which we have taken of the law, the instruction of the court below was wrong.

Judgment reversed, and new trial granted.