[No. 15711. Department One. July 22, 1920.]

FRANK NOEL et al., Respondents, v. GARFORD MOTOR TRUCK COMPANY et al., Appellants.

FRANK NOEL et al., Respondents, v. GARFORD MOTOR TRUCK COMPANY, Appellant.[1]

SALES (58)—WARRANTY—RESCISSION BY PURCHASER—WAIVER OF RIGHT. There is no waiver of the right to rescind for breach of warranty on the sale of a motor truck from the fact that the purchaser retained and used the truck for six or seven weeks after discovering the defects, where the delay in rescission was induced by repeated assurances of the vendor that it would be made to work properly, and efforts on the part of mechanics sent by the vendor to remedy the defects were without success.

SAME (59) — BREACH OF WARRANTY — RESCISSION — PLACING IN STATU QUO. The purchaser of a motor truck may rescind the sale for breach of warranty, although the truck suffered damage through a collision while in his possession, the evidence showing that the truck was in substantially the same condition after its repair as prior to the accident and that the collision was caused by a stalling of the truck due to a defective motor, and that the driver was free from negligence.

Appeal from a judgment of the superior court for King county, James B. Murphy, judge *pro tempore,* entered August 8, 1919, in favor of the plaintiffs, in

[1]Reported in 191 Pac. 828.

consolidated actions for rescission and to foreclose a chattel lien, tried to the court. Affirmed.

*Kerr & McCord* (*Wm. Z. Kerr,* of counsel), for appellants.

*Ryan & Desmond,* for respondents.

MAIN, J.—The two above entitled cases were consolidated in the superior court and tried as one action. The subject-matter of the litigation was a motor truck. In one of the cases, the plaintiffs were seeking to rescind the contract of purchase and recover their money back. In the other, the seller was attempting to foreclose a lien for labor performed upon the truck. The trial court sustained the right of rescission and entered a judgment accordingly. From this judgment, the Garford Motor Truck Company appeals. The controlling facts are not in material dispute.

On May 26, 1918, Fred Noel, one of the respondents, then residing at Yakima, came to Seattle and contracted for the purchase of a Garford motor truck. The truck purchased was at the time en route from the factory to Seattle. It arrived shortly before June 19, and was taken to the shop of the Commercial Garage to have a certain type of body placed on the chassis. On June 19, Fred Noel came again to Seattle, went to the Commercial Garage, received the truck and drove it to the Garford Company's place of business, some blocks distant in the same city. During this trip up town, there were several grades, and the motor, when it arrived at the Garford place, was heated to such extent that it stalled. The workmen of the Garford company spent most of the afternoon checking up the motor, and Noel left late in the afternoon to drive the truck to Yakima. He was unwilling, owing to the fact that the motor had heated upon its first trip through

the city, to make the trip to Yakima without assistance, and an employee of the Garford company, a mechanic, accompanied him.  The truck was run all that night and arrived at Yakima late the following afternoon.  During the night, it heated continuously; about every two hours the driver was forced to stop and let it cool off.  Shortly after the truck arrived at Yakima, it was driven a short distance on the road to tow in a broken-down car, and during this drive the motor heated and missed.  The following morning the truck was taken to Sunnyside, and during this trip it also heated.  After reaching Sunnyside, it was put immediately to work hauling gravel, but could only make a few trips a day, while other trucks of the same make would make ten or twelve.  The Garford company was notified, and in a few days sent a mechanic from Seattle to put the truck in proper condition.  After this the truck continued to heat when used, as before, and required frequent stops in order to cool it off.  At different times subsequent, other mechanics, upon complaint of the purchaser being made, were sent to look after the truck.  It was operated at Sunnyside for a period of six or seven weeks, when it was taken to Seattle.  During the period that it was operated at Sunnyside, it burned out four sets of wires, four sets of connecting rods, and a number of valves.  When the car arrived at Seattle, it was taken to the Garford company's garage and W. H. Krause, the sales agent who had sold the car, expressed his pleasure at the truck's being brought there, and said:

"We will see if we can fix it while you have it here. You need not worry about payment of the notes. Everything will be all right until your truck is either fixed up or we will do something."

The truck was then placed in the garage, where it was thoroughly overhauled.  A few days later, it was

delivered to Noel again, who sent it out to haul gravel from the waterfront in Seattle to a paving job on Rainier avenue. During the first trip, the motor heated and missed and the driver, when he reached the top of the grade, was compelled to stop and let it cool off. He finally delivered the load and started back to the city. On the return the motor continued to miss and, as he attempted to cross the car tracks, it stalled and an approaching street car rolled into it, causing serious damage to the frame and other parts of the truck. The truck was then towed to a garage near that of the Garford company. The motor was loosened from the frame and was taken to the Garford company for repair, while the straightening of the frame was done in the other garage. The Garford company, by arrangement made at the time, was not to charge anything for labor performed, and Noel was to pay for new parts that might be necessary in restoring the truck from its broken condition caused by the collision. After the truck was repaired, Noel tested it and discovered that it had the same tendency to heat and knock as it had during all the time that he had used it, and declined to have anything further to do with it. The truck was sold under a warranty which is referred to as "standard form" warranty. It is unnecessary here to set out the warranty, because there seems to be no controversy over the fact that, up to the time the car was returned to Seattle, it had not fulfilled the warranty. It had been kept and used under the repeated assurance of Krause that it would be made to work, and, as already stated, mechanics were, on a number of occasions, sent by the Garford Truck Company to put the truck in condition. Under the evidence, there can be no question but what the motor was defective. The trial court entered a decree cancelling the notes and

mortgage which had been given for the balance due on the purchase, less the sum expended in the purchase of new parts.

Under the heading "Argument," in the appellant's brief, it first propounds the question, "Could the respondents rescind at the time they attempted to do so?" Answering this question, if we have gathered the argument correctly, two principal contentions are made, the first of which is that Noel had retained and used the truck for such a length of time that it would be inequitable to permit a rescission. In support of this position, reliance is placed upon the general rule that, where an article is sold and does not meet the requirements of an express warranty, failure to give notice, or failure to return the property within a reasonable time after discovering the defects, operates as a waiver of the right to rescind and leaves the purchaser only the right to recover or offset damages. *Dickinson Fire etc. Brick Co. v. Crowe & Co.*, 63 Wash. 550, 115 Pac. 1087; *Fink v. Marr*, 81 Wash. 92, 142 Pac. 482. But that rule is not applicable to the facts in this case. While the truck was used for a considerable time, it was retained in reliance upon the assurance of Krause that it would be put in such condition as to satisfy the warranty. Repeated efforts were made by mechanics sent by Krause to put the motor in good working condition, but without success. Diligence in rescission is a relative question. What is unreasonable delay in a given case must depend upon particular circumstances. Delay in formal decision induced by the promise of the vendor to make the machinery work properly is not a waiver of the right to rescind. *Schroeder v. Hotel Commercial Co.*, 84 Wash. 685, 147 Pac. 417. In the present case, under the facts and circumstances, the truck was not retained

and used for an unreasonable time before rescission was attempted.

The appellant's second contention is that, since the truck had been damaged in a collision with a street car, the right of rescission does not exist. In this connection, reliance is placed upon the rule that, where property while in the possession of the purchaser has been damaged to such an extent that the parties cannot be placed *in statu quo,* the remedy of the purchaser is one of damages and not rescission. *Burnley v. Shinn,* 80 Wash. 240, 141 Pac. 326, Ann. Cas. 1916 B 96. This rule contemplates that, where rescission is attempted, the article purchased must be returned in substantially as good condition as when received, and the inability to return it in such condition is due to the fault of the purchaser. If the repairs did not effect a material change in the truck or substantially alter its condition, there is no reason why it could not be lawfully returned to the seller. Mechem on Sales, vol. 2, § 819; *Klock v. Newbury,* 63 Wash. 153, 114 Pac. 1032. The motor truck, after its repair, was in substantially as good a condition as it was prior to the accident. In addition to this, the evidence shows that the collision was brought about by the stalling of the truck due to a defective motor, and that the driver was free from fault in attempting to cross the street car tracks at the time and place that he did.

The judgment will be affirmed.

HOLCOMB, C. J., PARKER, TOLMAN, and MITCHELL, JJ., concur.