PARKHOUSE v. HODGE.

1. Sales—Misrepresentation—Evidence—Question for Jury.
    In an action by the purchaser of an automobile against the sellers, where plaintiff's claim that she purchased a new 1919 model car, but instead defendants furnished to her a 1918 model second-hand or refinished car, was supported by testimony, defendants' motion for a directed verdict in their favor was properly denied.

2. New Trial—Affidavits—Newly-Discovered Evidence.
    A motion for new trial, based upon affidavits alleging

newly-discovered .evidence, was properly denied, where counter affidavits were filed positively denying the newly-discovered evidence.

Error to Gratiot; Moinet (Edward J.), J.   Submitted June 16, 1922.   (Docket No. 113.)   Decided December 29, 1922.

Assumpsit by Susie Parkhouse against Jesse Hodge and Benson Hodge, copartners as Hodge Brothers, for breach of warranty in the sale of an automobile. Judgment for plaintiff.   Defendants bring error.   Affirmed.

*O. L. Smith* and *Searl & Searl,* for appellants.

*S. Wesselius* and *George P. Stone,* for appellee.

MOORE, J.   Plaintiff resides on a farm near Breckenridge, Michigan, and defendants are engaged at Breckenridge in the hardware business and in the sale of automobiles.   In the spring of 1919 plaintiff owned an Overland touring car which she exchanged for a new Willys-Knight car.   It was agreed defendants would allow plaintiff $800 for her old car toward the purchase price of the new one.   The price of the new car was $1,798.55.   The plaintiff claims the car was delivered to her at her garage April 8, 1919, while defendants claim it was delivered April 1st.   The plaintiff paid the balance of the purchase price in April, 1919.   It was the claim of plaintiff that at the time defendants delivered the car she looked it over hastily; that she had no knowledge or skill as to automobiles; that she had had many business transactions with the defendants and had entire confidence in their honesty and fair dealing; that because of sickness she did not run the car for about three weeks from the time it was delivered, and that it was never run very much after she got it.   She claims that when she com-

menced to use the car she had trouble with it; that the motor did not properly operate; that the lights showed battery trouble; and that the tires went to pieces. That she made an investigation by inquiries of garage people and others skilled in motor vehicles and that such investigation revealed the facts that the car was not a 1919 model, but a 1918 model. That it was not a new car but was at the time she got it a used, second-hand refinished car. That as soon as knowledge came to her that the car was not what she purchased, she notified the defendants of it in person and by letter, and the defendants on each oc-casion when she notified them insisted that she was mistaken and assured her that the car was just as they had represented. That by reason of these assur-ances of defendants she kept the car and used it occasionally during July and August and up to August 11th, when she became satisfied that the car had been misrepresented to her, and then she drove the car to the defendants' store in Breckenridge and told Jesse Hodge, one of the defendants and the one with whom she had had her dealings, that she would not accept the car, that it was an old refinished car, and invited him out to look it over and told him to take it and do as he pleased with it. And that the defendant Jesse Hodge then told her that he had no place for it, but if she would take it back to her garage and wash it up, and jack it up off the tires, that in a week or ten days he would get it and take it back to Detroit to the Simons Sales Company and get her a new car; that she did take the car back to her garage and did with it as he directed, and that at the time of the trial it was still in her garage; that after-wards the defendants refused to do anything about it, and she brought this suit. She gave testimony tend-ing to support her claim. At the close of the testi-

mony offered in her behalf, the defendants moved for a directed verdict. This motion was overruled.

The defendants claimed upon the trial that they never represented the car as a 1919 car, but told her it should be an 88-4 model. They also claimed it was a new car in every respect and was not a used or refinished car. They offered testimony tending to support their claim, and they denied they had ever told plaintiff to jack up the car and that they would take it back. Upon the close of all the testimony the defendants again moved for a directed verdict. This motion was overruled. The case was given to the jury. Plaintiff had verdict and judgment in the sum of $1,998.58. A motion for a new trial was made and overruled. The case is brought here by writ of error.

There are 44 assignments of error. Many of these assignments of error relate to the admission of testimony, especially that relating to the claim that the tires were so badly worn that they blew up soon after the plaintiff began to run the car, and that an inner tube had been patched, and the testimony as to the battery being an old battery, too light for the car, and to the testimony as to the paint and varnish showing it was an old car which had been refinished, and to the cross-examination of defendants' witness Lick. We have examined all of this testimony with care. We do not find any reversible error in relation thereto.

The important question is, Should there have been a directed verdict as claimed by defendants? We quote some of the testimony of the plaintiff:

"I dealt with Jesse Hodge about this Willys-Knight car. I first spoke to them about buying this Willys-Knight car about two weeks before it was delivered, on the 8th day of April. That talk was in the store, and my daughter, Balzura Parkhouse, was in the store. We had an Overland car, bought in 1917, and Jesse Hodge said he would make a deal which would allow us $800 for our Overland, and he would get

us a 1919 model Willys-Knight and he was going to
Toledo in a week or ten days, and he would bring me
back a brand new car from the factory—he would
bring me back a 1919 model car Willys-Knight. That
was all of the conversation that took place. No model
was named only the 1919 model Willys-Knight. That
was all that occurred at that time, and he delivered
the Willys-Knight car in the garage on April 8th, a
little better than a week from the time we had that
talk, and took the Overland on May 30, 1919. I did-
n't see Hodge after that talk before the car was de-
livered, but I saw Hodge at the store, and he gave me
an itemized bill, stating that it was a 1919 model, and
the serial number. Up to that time nothing had been
said about any serial number and I didn't know any-
thing about serial numbers of Willys-Knight or any
other car.

"From the time I bought the car, up to April 8th,
I was at home sick. When the car was delivered, I
wasn't feeling very well, and that night I was taken
with chills and fever and nearly had pneumonia."

She described how the car was used and what
happened as to the tires, the motor, the clutch and the
brakes, and its appearance as to having been refinished.
Continuing, she testified:

"I told Mr. Hodge that wasn't a 1919 model, and it
was a refinished car and if he would come out and
look at the car it would convince him it was a 1918
car and refinished, and he said, Mrs. Parkhouse, I
will take your word for it, and he says go ahead, clean
the car up and I will take the car back to Simons
Sales Company, Detroit; jack it up and I will take
it back, and you and your daughter, or you and your
brother can go to Toledo and we will bring back a
brand new 1920 five passenger Willys-Knight. This
is a seven passenger car.

"Q. What did he say?

"A. I told him I wouldn't accept the car, that I had
found out it was a refinished car, and an old car,
and had been driven so as to wear out the face of
the tires and other things, and the car showed it was
an old car, that he could take it and do just what

he pleased with it; and he said, Mrs. Parkhouse, polish it up and in a week or ten days I will take it back to Detroit to the Simons Sales Company and they can do just as they are a mind to.

"*Q.* What did he say about having room for the car, if anything?

"*A.* Said he had no place for the car and for us to clean it up and take it back and put it in the garage and in a week or ten days he would come and get it."

She further testified that she did as she was directed and that at the time of the trial the car was still in her garage jacked up and with the battery taken out. She was corroborated in many essentials by the testimony of her son and daughter. The defendants did not give the same version of what occurred. Plaintiff also offered testimony bearing upon the condition of the car.

The trial judge charged the jury at length and among other things said:

"Now I charge you as requested that if you find that the plaintiff received a new automobile and that the same was of the kind and model then on the market as the latest model of the Willys-Knight car, then she cannot recover in this case even though you find that later a different model in some respects of this same kind of automobile was placed on the market by the Overland Company. And even though she said she was to have a 1919 model, if this car which she got was known to the trade as a 1919 model and was the car which was then upon the market and sold by this company and its numerous agents as the 1919 model car, then that was the car which she purchased, even though this car was made and assembled prior to 1919; and I charge you as requested that even though you should find that the plaintiff contracted for a new 1919 model Willys-Knight automobile, yet if you find that the defendants delivered to her an automobile made in 1918 and find also that the car was new when it was placed in the Simons Sales Company's rooms in Detroit and was also new when it

was delivered by the defendants to the plaintiff, and that it was the same kind and model of car then being sold and the latest one then on the market, that would be a 1919 car for the purposes of this case, and your verdict should be for the defendants of no cause of action.

"So that you take up the first question, What was the contract between these people? If you find under the rules I have given you that the defendants performed their contract and furnished her with the car which it was agreed she was purchasing then, of course, the plaintiff cannot recover. If you find that they did not perform their contract whether they knew it or not, if it was a second-hand car or was a used car or was a refinished car, refinished where it had been used and was defective in the various particulars as stated here, if you find that it was in that condition then the plaintiff, having in mind her situation, her knowledge as to automobiles, she would have a reasonable time in which to use this car and investigate and determine whether or not the defendants performed their contract in delivering that kind of a car to her, and if upon discovering that it was not the car she had purchased, she would have the right to rescind the contract, to return the car or offer to return it, and to give them notice of her claims in that regard, and if she was correct and if she acted promptly in the matter as I will charge you she would be entitled to recover the moneys which she paid as the purchase price for this car. If you find that it was as she claimed then you will take up the question as to whether or not she did act promptly in the matter, and in doing that you should take into consideration all of the surrounding facts and circumstances, the nature of the claim, what would be a reasonable time for this woman unskilled in automobiles, for her to discover and learn whether this was a used car and was a refinished car and was not the car which she purchased. Have in mind all of the surrounding facts and circumstances; did someone tell her, did the defendants misrepresent to her in that regard, did she move promptly as a reasonable, careful and prudent person should do under the circumstances? * * *

"I further charge you as requested that if the

plaintiff received the kind of automobile that she contracted for, that is the end of your deliberations and you should return a verdict of no cause of action. If you find that the defendants kept their contract with the plaintiff at the time she ordered the automobile and delivered to her that car she ordered, plaintiff cannot recover in this case no matter what defects later appeared in the tires or battery or any other parts of the car. This isn't an action brought to recover damages for a breach of contract for the sale of a car for certain defects—you have got nothing to do with any damages on account of the tires or the battery or anything of that kind. * * *

"There has been some evidence here, gentlemen, upon the question as to some talk about Mrs. Parkhouse taking the car back home, cleaning it up and putting it on jacks, retaining it there until the defendants could go to Detroit and see the Simons Sales Company or get a new car or something of that kind and that a catalogue was given at that time and that she claims it was understood that he took the car back at that time. I don't remember all of her evidence in that regard but if you find according to her evidence, according to her statement that that was the fact, that they agreed there that she should take the car back home because he had no room for it at the garage, and that later on he would get the car and take it to the Simons Company or get another car in the place of it or something in that regard then that would be in law a rescission by agreement, but the burden is upon her to satisfy you under the rules I have given you that that was the agreement."

One other question calls for consideration. Did the court err in overruling the motion for a new trial? This motion was based upon the same reasons given when a directed verdict was requested with the additional claim of newly-discovered evidence to the effect that plaintiff used the car in the fall of 1919, visiting a neighbor and attending the Isabella county fair. Counter affidavits were filed in which it was stated in the most positive terms that the car was jacked up in August, 1919, and the battery removed

and that it had not been out of the garage from that time until the trial. We discover no reversible error. See *Greissing* v. *Oakland Motor Co.*, 204 Mich. 116, and *Kawecki* v. *Stuber-Stone Co.*, 218 Mich. 25.

The judgment is affirmed, with costs to the plaintiff.

FELLOWS, C. J., and WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred.