## PINE-BROWNELL CO. v COLEMAN

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1589.   Decided Jan. 8, 1940.

Cowden & Cowden, Dayton, for plaintiff-appellee.

Jacobson & Durst, Dayton, for defendant-appellant.

## OPINION

By GEIGER, J.

This matter is before us on appeal on questions of law from an order of the Court of Common Pleas, which heard the case on an appeal from a decision of the Municipal Court of Montgomery County.

The assignment of errors in this is to the usual effect.

We make a brief statement of the facts as they, in substance, appear from the pleadings.   On January 16, 1935, Pine-Brownell Company bought from one James Winn, Account No. A34079-5 in the Mutual Home & Savings Association of Dayton, Ohio.   At the time of the purchase, Pine-Brownell Company took from Winn an affidavit of his ownership together with the passbook and also had him sign assignment sheets transfering said account to a blank transferee.   Pine-Brownell were brokers engaged in buying and selling building and loan accounts.   On January 22, 1935, Dr. Coleman purchased from the brokers a quantity of Mutual Home running stock, among the certificates for which was the Winn certificate.   The brokers delivered to Dr. Coleman the documents that they had received from Winn, making no additional assignments or representations. They treated the Winn account as what is commonly known as a "street form". On March 9, 1937, Dr. Coleman re-sold to the same brokers this assignment and re-delivered to them the documents that he had received from the brokers on January 22, 1935, and the brokers paid to him for said certificate $525.00. On the same day the brokers took the documents to the Mutual Home & Savings Association, which refused to honor them for the reason, as claimed by the Association, that in 1936, it had issued a duplicate book for this account, upon Winn's affidavit that he had lost the original and this duplicate account was thereafter sold to another purchaser and transferred on the books of

the association. The brokers attempted to stop payment on the check to Dr. Coleman, but the same was paid and action was brought in municipal court to recover from Dr. Coleman the amount of the check.

The cause was heard in the Municipal Court and many questions were presented and argued before that court. The court found on the issues in favor of the plaintiff and a motion for new trial was filed, which was by the court overruled and it was ordered that the Pine-Brownell Company recover of Coleman the amount of $528.00 and that a cross-statement filed by Coleman be dismissed. To this final judgment in the municipal court, a notice of appeal on questions of law was given and the case filed in the Court of Common Pleas where the usual assignments of error were filed.

The cause came on for hearing in that court on June 26th, 1939, and the entry was to the effect that the court finds that there is no error apparent on the record and it was ordered that the judgment of the municipal court be affirmed.

Thereupon the defendant-appellant gave notice of appeal on questions of law.

The facts in the case are not seriously in dispute and are exhibited by a bill of exceptions, which we have carefully read. We do not find that the bill requires any substantial modification of the statements heretofore made in this opinion.

The defendant-appellant in his brief urges that the transaction from Pine-Brownell, and the reverse transaction from Dr. Coleman to Pine-Brownell, were merely the handing over the same documents originally given by Winn, without any change or, in other words, that when, on March 9, 1937, Dr. Coleman made his deal with Pine-Brownell for $528.00 he signed nothing, executed no transfer sheets, but merely handed back to them the papers which he had received from them, they being in the same condition as when turned over to Pine-Brownell by Winn on January 16, 1935.

It is also urged that when the Mutual Home Association, upon the presentation of Winn's affidavit in 1936 claiming the loss of the original passbook, issued to him a duplicate passbook, which he transferred to Irene Baker, the Association had not thereby shown that the account is not still properly standing in the name of James Winn and that a suit should have first been brought by Pine-Brownell to obtain a judicial determination whether the Mutual Home Association was justified in re-issuing a duplicate passbook or in determining that the documents sold by Dr. Coleman were valueless by reason of the issuance and transfer of the new passbook to Winn.

It is also pointed out that Coleman on March 9, 1937, signed no documents, but merely re-delivered to Pine-Brownell the documents which Pine-Brownell had previously delivered to Coleman and that just as Coleman had originally paid Pine-Brownell for the delivery of these documents so Pine-Brownell now paid for the re-delivery thereof and it is contended that the account itself was not being sold either by Pine-Brownell to Coleman or by Coleman to Pine-Brownell, but what was being sold was Winn's blank assignment of such account. It is asserted that the rights of the Mutual Association have not been so determined as would justify it in refusing recognition of the documents which originally passed from Pine-Brownell to Coleman and subsequently from Coleman to Pine-Brownell.

We are unable to follow this line of reasoning. Certainly the documents that passed between the parties were more than mere "scraps of paper", the title to which was all that was warranted. They represented a chose in action and were capable of being bought and sold as any other chose in action and represented, not simply pieces of paper, but an account, the title to which could have been transferred on the books of the Association by virtue of the assignments, the affidavit and the delivery of the passbook. We think the transaction is probably within the pro-

visions of §8395 of the General Sales Act and that there was an implied warranty that the documents that passed between the parties really represented an account then standing upon the books of the Association. Paragraph 5 of the section cited provides:

"An implied warranty or condition as to the quality or fitness for a particular purpose may be annexed by the usage of trade."

Certainly the usage of trade annexed to these certificates the warranty that at the time of the transfer they represented an existing account. If §8395 GC does not apply, there are other appropriate sections of the Sales Act.

Sec. 8416 GC provides that when a person for value transfers a document of title by delivery, including one who assigns for value a claim secured by a document of title, he warrants that the document is genuine, that he has a legal right to transfer it, that he has knowledge of no fact which would impair its validity, that he has a right to transfer the title and that the goods so transferred are fit for the particular purpose of the sale, whenever such warranty would have been implied if the contract had been to transfer without a document of title the goods represented thereby.

We think we may safely say that, under the provisions of this section, the documents in question could not be considered merely paper writings, but that they really represented something of value as indicated upon their face.

Sec. 8449-6 provides that the measure of damages for breach of warranty is the loss directly and naturally resulting in the ordinary course of events from the breach of the warranty. This would mean, in the particular case, the amount of money that was paid by Pine-Brownell Company to Coleman.

On January 22, 1935, Pine-Brownell sold to Coleman all the necessary documents which would have entitled Coleman to have had the account transferred to his own name. Instead of that, Coleman placed these documents in his safe where they remained undisturbed until March 9, 1937. In the meantime, in 1936, a year and four months after Coleman purchased the documents evidencing title, the original owner Winn, made the affidavit by which he secured a new book evidencing the title to the property upon the books of the Association. This certainly could not be attributed to Pine-Brownell Company. It was under no obligation to see that Coleman did the obvious thing in having the original transfer entered on the books of the Association and was not in any way responsible for his failure to do so.

As to the claim of the appellant that Pine-Brownell has no right of action until it be first determined whether or not the affidavit of Winn justified the transfer by the Mutual Home Association of the account to some other person, the answer is apparent that Pine-Brownell Company was buying an account, not a law suit. If there is any doubt as to the right of the Mutual Association to transfer the Winn stock that remedy may be pursued by Coleman and if it is a fact that the Winn stock was wrongfully transferred by the Building and Loan Association, then Coleman has his right of action against the Building and Loan Association. The Pine-Brownell Company is not obliged to pursue this before it can recover the money it has paid to Coleman for something Coleman did not have, or, at least, to which he could not then deliver a title.

We have read the judgment of the court below and are in entire sympathy with it.

Judgment affirmed.

HORNBECK, PJ. & BARNES, J., concur.