## PARK CIRCLE MOTOR CO. *v.* WILLIS

[No. 8, October Term, 1952.]

*Decided December 5, 1952.*

*Motion for reargument or, in the alternative, for clarification of the Court's opinion, filed December 30, 1952. Motion for reargument denied, motion for clarification granted, and per curiam opinion filed, Febraury 12, 1953.*

The cause was argued before MARKELL, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Robert F. Skutch, Jr.* and *Jack C. Merriman,* with whom were *Leonard Weinberg* and *Weinberg and Green,* on the brief, for appellant.

*Norman P. Ramsey,* with whom were *Harold Tschudi, Rignal W. Baldwin* and *Semmes, Bowen and Semmes,* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought in the Superior Court of Baltimore City by George C. Willis against Park Circle Motor Company for breach of warranty of title to a Cadillac sedan sold by defendant to plaintiff and subsequently found to be stolen property.

Defendant, who had purchased the automobile from a licensed used car dealer in New York City, sold it to plaintiff on July 25, 1950, for $3,195. On March 8, 1951, agents of the Federal Bureau of Investigation and city police discovered that the car had been stolen in Elizabeth, New Jersey, from Milton Serota, and thereupon seized it for the true owner, Firemen's Fund Insurance Company, to whom Serota had assigned the title on July 18, 1950. Two days after the law enforcement officers seized the car from plaintiff, defendant tendered it back to plaintiff, as the insurance company had assigned the title to defendant. Plaintiff, however, refused to accept it and brought suit to recover $3,195, the purchase price, plus $63.90, the Maryland title tax, and $24.25, the cost of the title and the license tags, and in addition $122.64, the amount he spent for repairs to the car.

Defendant claimed the right to deduct the value of plaintiff's use of the automobile. The Court, rejecting that claim, rendered judgment in favor of plaintiff for $3,283.15, which was the price of the car plus the tax, and the cost of the title and tags. Defendant appealed from that judgment.

The Uniform Sales Act, adopted by the Maryland Legislature in 1910, provides that where there is a

breach of warranty by the seller, the buyer may, at his election, refuse to accept the goods, if the property therein has not passed, and maintain an action against the seller for damages for the breach of warranty; or rescind the contract to sell or the sale and refuse to receive the goods; or, if the goods have already been received, return them or offer to return them to the seller and recover the price, or any part thereof, which has been paid. Laws 1910, ch. 346, Code 1951, art. 83, sec. 87(1)(c)(d).

It is not clear from the declaration and the briefs in this case whether the action is for damages for breach of warranty or for recovery of the purchase price based upon a rescission. The Sales Act provides that where the goods have been delivered to the buyer, he cannot rescind the sale if he fails to return or to offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. Sec. 87(3).

In 5 *Williston* on *Contracts,* Rev. Ed., sec. 1463, it is pointed out that the buyer must put the seller *in statu quo,* but that temporary possession of the buyer is negligible if the goods are still uninjured when tendered back. Some of the courts have gone rather far in allowing rescission without making any allowance for use. In several cases rescission of the sale of an automobile was permitted without allowance for use, although such use was rather considerable. *Conner v. Borland-Grannis Co.,* 294 Ill. 58, 128 N. E. 317; *Parkhouse v. Hodge,* 221 Mich. 308, 191 N. W. 13; *Brooke v. Perfection Tire Co.,* 110 Or. 567, 223 P. 939; *Noel v. Garford Motor Truck Co.,* 111 Wash. 650, 191 P. 828. On the other hand, in *Burnley v. Shinn,* 80 Wash. 240, 141 P. 326, where an automobile, while in the possession of the buyer, had been damaged to such an extent that the parties could not be placed *in statu quo,* a rescission was not permitted.

The Sales Act provides that the measure of damages for breach of warranty is the loss directly and naturally

resulting, in the ordinary course of events, from the breach of warranty. Sec. 87(6).

The rule laid down by the majority of decisions in the United States is that the measure of damages for breach of warranty of title to personal property is the purchase price of the property with interest. *Morgan v. Hendrie Bros.*, 34 Colo. 25, 81 P. 700; *Smith v. Williams*, 117 Ga. 782, 45 S. E. 394; *Knoerzer v. Meyer*, 251 Ill. App. 139; *Moorehead v. Davis*, 92 Ind. 303; *Ellis v. Gosney's Heirs*, 7 J. J. Marshall, Ky., 109; *Noel v. Wheatly*, 30 Miss. 181; *Caproon v. Mitchell*, 77 Neb. 562, 110 N. W. 378; *Weideman v. Estate of Peterson*, 129 Neb. 74, 261 N. W. 150; *Kingsbury v. Smith*, 13 N. H. 109; *Pine-Brownell Co. v. Coleman*, 63 Ohio App. 259, 26 N. E. 2d 216; *Balte v. Bedemiller*, 37 Or. 27, 60 P. 601; *Mauldin v. Milford*, 127 S. C. 508, 121 S. E. 547; *Gessler v. Winton*, 24 Tenn. App. 411, 145 S. W. 2d 789; *Hall v. Ellwood*, Tex. Civ. App., 34 S. W. 2d 892; *Duecker v. Goeres*, 104 Wis. 29, 80 N. W. 91. The same result has been reached in many cases by allowing recovery of at least the purchase price for a total failure of consideration. Under the Sales Act, the buyer can elect to seek recovery either by restitution or far failure of consideration.

We see no reason to change the general rule. In *Myers v. Smith*, 27 Md. 91, 110, 111, this Court held that the seller of personal property is bound to protect the buyer from all evictions arising from circumstances anterior to the sale, of which the cause or germ existed at the time of sale; and if the property is lawfully seized to pay the seller's debt, the buyer is entitled to recover for breach of implied warranty, and the measure of damages is "the value of the property so taken, with interest thereon," or the amount the buyer is compelled to pay in order to emancipate it from the claim of the creditor.

The writer of this opinion believes, however, that where the buyer has had possession of the property for a considerable period of time and as a result there-

of it has substantially decreased in value, he should not be allowed more than his actual loss. That qualification has been adopted in *Hendrickson v. Back,* 74 Minn. 90, 76 N. W. 1019, *Peregrine v. West Seattle State Bank,* 120 Wash. 653, 208 P. 35, and other cases. In this case plaintiff drove the car more than 5,000 miles between July, 1950, and March, 1951, and when it was sold it brought $2,300. It seems unjust to allow plaintiff more than $2,300.00, with interest from March 8, 1951.

However, the majority of the Court is of the opinion that plaintiff should be allowed the entire sum of $3,283.15, its value at the time of purchase plus the title tax and the amount paid for the title and license tags. The judgment will therefore be affirmed.

*Judgment affirmed, with costs.*

### PER CURIAM OPINION ON MOTION FOR REARGUMENT OR CLARIFICATION.

The motion for reargument, or in the alternative, for clarification of the Court's opinion, is based on the allegations: 1, that the authorities cited in the Court's opinion are inconsistent with the Court's conclusion; 2, that the Court's opinion and judgment ignores the appellant's right of set-off as assignee of the true owner of the vehicle; 3, that the Court's opinion allows a vendee to realize a profit from an innocent vendor's breach of warranty. The motion for reargument is denied; the motion for clarification is granted.

The opinion of the majority of the Court held that the Sales Act gives a buyer the absolute right to rescind for breach of warranty of title, if he chooses to elect that relief. As the Court pointed out in *Hamlin Machine Co. v. Holtite Mfg. Co.,* 197 Md. 148, 152, 78 A. 2d 450-452, under Art. 83, Sec. 87(1) of the 1951 Code, "where there is a breach of warranty by the seller, the buyer at his election has four alternative remedies". He may (a) accept, or keep, the goods and set up the breach

by way of recoupment, (b) accept, or keep, the goods and maintain an action for damages for breach of warranty, (c) refuse to accept the goods if property has not passed, and sue the seller for damages for breach of warranty, or (d) rescind the contract and refuse to receive the goods or, if he has received them, return them "and recover the price, or any part thereof, which has been paid". These remedies are mutually exclusive. In the *Hamlin* case, this Court decided that an election was not irrevocable until final judgment, and that the defendant below could amend its counter claim from one for damages for breach to one for recission and the return of the amount paid under the contract. In the case at bar, the Court decided that the declaration filed by the plaintiff below, the appellee here, alleged facts justifying the relief of rescission, and that the stipulation which was filed in lieu of other pleadings and evidence, showed that the facts supported the allegations of the declaration. This being so, we held that the action was for rescission and that the plaintiff properly prevailed and properly was allowed the return of the price paid for the stolen automobile and the expenses he had been put to, as allowed by the trial court.

Where rescission is recognized, the restitution of the purchase price is not to be reduced by the value of the use or the difference between the purchase price and value at the time of the return. As the opinion in the case points out, *Williston* on *Contracts*, Rev. Ed. Sec. 1463, emphasizes that the Courts have gone far in allowing rescission without deducting any amount attributable to use, even though that use has been rather considerable. The cases cited by *Williston* and in the opinion of the Court are those where the rescission was for breach of warranty of quality. The same rule has been applied in cases where the breach, as in this case, was for the warranty of title although in one case the car had been used for two years. These include: *Rundle v. Capitol Chevrolet, Inc.*, (Tenn.) 129 S. W. 2d

217; *Mann v. Rafferty,* 100 Pa. Sup. Ct. 228; *Yattaw v. Onorato,* 66 R. I. 76, 17 A. 2d 430; *Argens v. Whitcomb,* 20 Wash. 2d 371, 147 Pac. 2d 501; and *Rowland v. Divall,* (1923) 2 K. B. 500, 13 British Ruling-Cases 98. See also *Restatement-Contracts,* Sec. 349, Subsec. (1), Illus. 2. The illustration relates the return of an automobile by B, the purchaser, for breach of a substantial warranty, after the car had been driven a few hundred miles. It continues that "slight use of the machine by B did not substantially affect its physical condition, although it considerably reduced its market value. B can get judgment for restitution of the price paid".

Since the decision in the case was based on a holding that there had been a rescission in fact and that the action is for restitution, it was not necessary for the Court to decide, and we did not, what the proper measure of damage is, where the action is under the alternative given by paragraph (c) of Sec. 87(1) of Art. 83 of the 1951 Code, that is, where the action is for damages for breach of warranty. There are two main lines of authority in such instances. One holds that, as in rescission, the proper measure is the purchase price with interest, the other line of cases holds that the true measure is the value of the article at the time it was taken from the buyer. *Williston on Sales,* Rev. Ed., sec. 615 (a), urges that the second rule is the preferable one, but he contends for the holding that the buyer in any case is entitled, as a minimum, to the same relief he would have in rescission, and that if additional damage has been suffered it, too, may be recovered. In the section cited, the learned author says, in speaking of the cases which say the buyer can recover only the purchase price, with interest, in a suit for damages: "This rule virtually confines the remedy of the buyer to rescission and restitution, *a remedy to which the injured buyer is undoubtedly entitled if he so elects,* but it is a violation of general principles of contracts to deny him in an action on the contract such damages as will put him in as good a position as he would have occupied

had the contract been kept." (Emphasis supplied). New York has dealt with this problem and adopted Mr. Williston's contention by an amendment of the Sales Act, which adds to paragraph (d) of Section 87(1),. Art. 83, after the words "recover the price or any part thereof which has been paid", this language: "and damages recoverable in an action for breach of warranty to the extent that such damages are not compensated by recovery of the purchase price paid . . .". This statute is referred to in the *Hamlin* case, *supra*. It is not necessary, as we have said, to decide the correct answer to the two alternatives in a suit for damages, since, in the present case, the decision is based on rescission and the amount allowed in such an action.

Appellant contended strenuously in original argument, and continued the contention in the motion for clarification, that the Bill of Sale and Assignment from the Fireman's Fund Insurance Company gave it "for a valuable consideration, ownership and title to the vehicle in issue, and all rights to the use, pleasure and enjoyment of said automobile which had accrued to Fireman's Fund Insurance Company during the seven (7) months in which appellee enjoyed possession and use of said automobile". The obtention of good title to the automobile and the assignment secured by it to all rights of the insurance company, could not defeat the right of the appellee to rescission and restitution for the purchase price of the car. *Yattaw v. Onorato, supra.* The original owner from whom the car was stolen, and the Fireman's Fund Insurance Company, might have had a valid claim against both the appellant and the appellee for the conversion and use of the stolen automobile. The appellant argues that it is the present owner of their potential claim. There was, however, a complete failure of proof of any actual loss or damage. It was admitted by the appellant in argument that the amount the Insurance Company paid the true owner was $2,400.00; the amount which

the appellant, in turn, paid the Insurance Company, was $2,401.00. Obviously, the Insurance Company's estimate of any damages it had suffered for loss of use was a nominal $1.00. It is also significant in this connection that the amount the true owner received was only $100.00 more than the appellant ultimately sold the car for. The appellant, in its thinking and in its argument, equates the dollar value of its claim for loss of use to the dollar value of the difference between the amount for which it sold the car to Willis, and the amount at which it finally sold the automobile after it had acquired good title. There is not necessarily a coincidence.

If it be assumed that the amount which the original owner and the Insurance Company could claim against the appellant and the appellee was the sum which equals the difference between the Willis purchase price and the ultimate sales price, the appellant, when it purchased that claim, extinguished all prior rights against it and the appellee, insofar as the true owner and the Insurance Company are concerned. It is to be noted that the joint tort feasors Act—Art. 50, sec. 25 of the 1951 Code, says that "this sub-title does not impair any right of indemnity under existing law". There are many instances where an injured third person may recover against either of two persons who are, as far as he is concerned, thus joint tort feasors. It does not follow, however, in all such cases that the two wrong-doers are equally liable. There may be, and often are, cases where one of the wrong-doers is primarily liable, and in those cases, such a one must bear the whole loss. See *Baltimore & Ohio R. Co. v. Howard Co.,* 113 Md. 404. The case at bar is such a case. *Restatement-Restitution,* Sec. 91, says: "If a person, representing that he has a power of disposition of land or chattels, has sold or leased them to another who relied upon such representation and thereby subjected both to liability in tort to a person entitled to the land or chattels, he is under a duty

of indemnity to the other for the expenditures properly made in the discharge of such liability." Illustration 2, par. b: "Sale or lease of chattels", gives as an example a case where A sells to B, as his own, silk which he has purchased from a reputable retail store and therefore believes that he owns it. B believes A to be the owner. The true owner, C, sues B and obtains a judgment for $1,000, which B pays. B is entitled to indemnity of $1,000 from A.

In the notes to the *Restatement-Restitution*, where the Reporters were Warren A. Seavey and Austin W. Scott, it is said in regard to Sec. 91: "The principle underlying this Section is the same as that underlying Sections 89 and 90, that is, restitution is dependent upon a misrepresentation by one person to another. The cases cited under those Sections are authorities, at least for the underlying principle, especially the cases under Section 90 involving the liability of the principal to an agent for the innocent conversion by the agent of goods of a third person delivered to him by the principal." See *Bernstein v. Nederlandsche Amerikaansche, etc.,* 6 F. R. D. 297, affirmed by the Court of Appeals, 2nd Circuit, 173 Fed. 2d 71. There, there was a warranty of title, and Section 91 of the *Restatement-Restitution* was cited. See also *P. B. & W. R. R. Co. v. Roberts,* 134 Md. 398. In that case the defendant had the railroad issue bills of lading for three carloads and delivered only two carloads. The carrier was held liable to, and paid, a third person who had purchased the bill of lading. Indemnity was permitted the carrier for the amount paid. In *Henderson v. Sevey,* 2 Greenleaf, 139 (Maine 1882), a shipmaster received casks of lime, represented by the owner as good lime, and sold them as such. They were filled with a substance of little or no value and the shipmaster was sued by the vendee and obliged to respond in damages. It was held that he might recover from the owner of the lime the amount of the judgment.

Even if the appellant were right in its contention that it owned the claim for loss of use, and that the claim was a substantial amount, it could not recover from the appellee. Its purchase would have merely served to extinguish all claims of the true owner against both it and the appellee.